UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THOMAS EDWARDS,                                    16-CV-0948-MJR
                                                   DECISION AND ORDER
        Plaintiff,

  -v-

COMMISSIONER OF SOCIAL SECURITY,[1]

        Defendant.
_____

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 16).

Plaintiff Thomas Edwards ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying him Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 12) is granted, defendant's motion (Dkt. No. 14) is denied and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## **BACKGROUND**

On May 31, 2013, plaintiff filed an application for SSI alleging disability since November 24, 2010 due to a right hip replacement, an inability to bend, sit, stand or walk

---

[1] The Clerk of Court is directed to amend the caption accordingly.

for periods of time, and swelling in his hands and feet.[2] (*See* Tr. 176).[3] Plaintiff's disability benefits application was initially denied on February 3, 2012. (Tr. 98-103). Plaintiff sought review of the determination, and a hearing was held before Administrative Law Judge ("ALJ") Stephen Cordovani on April 6, 2015. (Tr. 32-77). On May 5, 2015, ALJ Cordovani issued a decision that plaintiff was not disabled under the Act. (Tr. 20-27). Plaintiff timely sought review of the decision by the Appeals Council. (Tr. 15-16). Plaintiff's request for review of the decision was denied by the Appeals Council on September 26, 2015. (Tr. 1-7). The ALJ's May 5, 2015 denial of benefits became the Commissioner's final determination, and the instant lawsuit followed.

Born on August 20, 1951, plaintiff was 63 years old at the time of the ALJ's May 2015 decision. (Tr. 175). Plaintiff was most recently employed as a housing overseer at Altamont, a residential rehabilitation program, from 1999 through 2003. (Tr. 24, 219-20, 252). His job involved monitoring and assisting the former prisoners enrolled in the program. (*Id.*).

## **DISCUSSION**

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the]

---

[2] Plaintiff also filed an application for disability insurance benefits. However, that application was denied because plaintiff did not have sufficient quarters of coverage. Plaintiff has not appealed that determination.
[3] References to "Tr." are to the administrative record in this case.

2

conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has

a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work,

then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

   III.   *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the application date of May 31, 2013. (Tr. at 22). At step two, the ALJ found that plaintiff has severe impairments consisting of right hip osteoarthritis status post fall, femur fracture with hip replacement and internal fixation.[4] (*Id.*). At step three, the ALJ determined that plaintiff does not have an impairment that meets or medically equals the severity of one of the listed impairments. (Tr. 23). Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except can occasionally climb ramps and stairs, balance and bend. He is unable to kneel, crouch, or climb ladders,

---

[4] Also at step two, the ALJ indicated that plaintiff has a history of abuse of alcohol, marijuana, crack cocaine and heroin. (Tr. at 23). Plaintiff last used drugs ten years ago and last consumed alcohol one year ago. (*Id.*). Thus, the ALJ found plaintiff's substance abuse to be non-severe because it has been in sustained remission. (*Id.*). The ALJ noted that plaintiff has hypertension but that it is not severe and does not cause work-related limitations. (*Id.*). The record indicates that plaintiff suffers from hepatitis C. (*Id.*) However, he does not receive treatment and there is no evidence that it causes work-related limitations. (*Id.*) The ALJ also noted that an echocardiogram performed on plaintiff on July 8, 2014 revealed a normal left ventricular fraction of approximately 55% and no further cardiac testing was recommended. (*Id.*).

6

ropes or scaffolds. He is unable to use foot controls. He should be permitted to use a pillow while sitting and needs to sit or stand at will while on task.

(Tr. 23-30). Proceeding to step four, the ALJ determined that plaintiff is able to perform his past relevant work, described as a Case Aide, DOT #195.367-010, semi-skilled (SVP 3), with a light exertional level. (Tr. 27). In reaching this determination, the ALJ heard testimony from Michelle Erbacher, a vocational expert.[5] (*Id.*). Accordingly, the ALJ found that plaintiff has not been under a disability within the meaning of the Act from May 31, 2013, the date the application was filed, through the date of his decision. (Tr. 27).

IV. *Plaintiff's Challenges*

Plaintiff argues that the ALJ's RFC findings are not supported by substantial evidence. (*See* Dkt. No. 12-1 (Plaintiff's Memo. of Law)). An individual's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). In determining the RFC, the ALJ must "consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 07-CV-803, 2009 U.S. Dist. LEXIS 130826 (N.D.N.Y. June 4, 2009); *aff'd* 370 Fed. Appx. 231 (2d Cir. 2010). Here, the ALJ determined that plaintiff could perform light work with some additional limitations. The regulations define light work as consisting of the following:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm and leg controls. To be considered

---

[5] VE Erbacher testified that plaintiff's prior occupation as a housing overseer in a drug rehabilitation program was, according to the Directory of Occupational Titles, closest to that of Case Aide. (Tr. 69-70).

7

capable of performing a full or wide range of light work, you must have the
ability to do substantially all of these activities.

20 C.F.R. §404.1567(b). The ALJ limited plaintiff's ability to perform light work, in part, by qualifying that plaintiff could "occasionally climb ramps and stairs, balance and bend [and was] unable to kneel, crouch, or climb ladders, ropes or scaffolds…[or] use foot controls." (*Id.* at 23). After reviewing the ALJ's decision, the hearing transcript and relevant evidence in the record, the Court finds that there is not substantial evidence to support the ALJ's assessment that plaintiff can occasionally climb stairs.

On November 5, 2010, plaintiff fell down several stairs resulting in a fracture to his right femur. (Tr. 324-26). On November 6, 2010, he underwent an open reduction and internal fixation of the right subtrochanteric femur fracture, right total hip arthroplasty (right total hip replacement), and extended trochanteric osteotomy. (Tr. 327-29). Medical records indicate that the procedure was performed to address both the injuries plaintiff sustained as a result of the fall and his severe history of osteoarthritis. (*Id.*).

On January 23, 2012, Gautam Arora, M.D. performed a consultative internal medicine examination of plaintiff upon referral by the Division of Disability Determination. (Tr. 279-81). At that time, plaintiff complained of right hip pain consisting of a sharp, aching and throbbing sensation that radiated down to his foot. (Tr. 279). Plaintiff complained that the pain resulted in numbness, tingling, and burning as well as difficulty walking up and down stairs. (*Id.*). Dr. Arora found that plaintiff had limited range of motion in his right hip, including a flexion and extension of 80 degrees, an internal rotation of 20 degrees, and an external rotation of 30 degrees. (Tr. at 280). Dr. Arora concluded that plaintiff had a marked limitation to climbing up and down stairs and moderate limitation to walking, secondary to right hip pain. (Tr. 281). Hongbiao Liu, M.D. conducted a

8

consultative internal medicine exam of plaintiff on August 12, 2013, also upon request by the Division of Disability Determination. (Tr. 315-17). At that time, plaintiff complained of continued hip pain that radiated down his right leg. (*Id.*). Like Dr. Arora, Dr. Liu found that plaintiff had limited range of motion in his right hip. (Id.). Dr. Liu diagnosed plaintiff with right hip pain and hypertension. (*Id.* at 317). Dr. Liu opined that plaintiff had a mild to moderate limitation to prolonged walking, bending and kneeling. (*Id.*). Dr. Liu did not offer an opinion as to plaintiff's ability to climb stairs. (*Id.* at 315-17).

Here, the ALJ found that plaintiff could occasionally climb stairs. However, he provides virtually no explanation as to the evidence he relied on to reach this conclusion. The ALJ notes that plaintiff testified that he could "climb stairs slowly holding onto a rail." (Tr. at 24). However, there was no testimony as to how often plaintiff was able to climb stairs over the course of an eight-hour work day. Indeed, the only medical opinion in the record as to plaintiff's ability to climb stairs is Dr. Arora's finding of a marked limitation.[6] The ALJ does not state what weight, if any, he gave to Dr. Arora's finding. Thus, it is not known if the ALJ concluded that a marked limitation did not prevent occasional stair climbing or if the ALJ rejected Dr. Arora's finding of a marked limitation. As explained below, remand is warranted in either case.

If the ALJ is in agreement that plaintiff has a marked limitation as to climbing stairs, remand is necessary for the ALJ to explain how a marked limitation in that area is consistent with occasional stair climbing. The Social Security Regulations define "occasionally" as "occurring from very little up to one-third of the time." *See SSR* 83-10, 1983 SSR LEXIS 30, *10 (SSA 1983). The ALJ does not explain how a marked limitation

---

[6] Dr. Liu, whose opinion the ALJ affords "great weight", did not make a finding as to plaintiff's ability to climb stairs.

9

would allow plaintiff to spend up to one-third of his work day climbing stairs. This lack of clarification is especially significant here, where the ALJ found that plaintiff could return to his past work and there is evidence in the record that plaintiff's past work involved climbing. Indeed, plaintiff informed the Social Security Administration that his former position as a housing overseer required him to climb two hours per day and "to climb up and down stairs a lot." (Tr. 220, 252). Further, plaintiff testified at the hearing that one of the main reasons he can no longer perform the requirements of his prior position is his inability to climb stairs. (Tr. 39, 41-42). Thus, an explanation is needed as to how a marked limitation in the ability to climb stairs supports the ALJ's RFC finding that plaintiff can "occasionally" climb stairs as that term is defined in the Social Security Regulations. *See Oney v. Colvin*, 1:14-CV-00720, 2017 U.S. Dist. LEXIS 40253 (W.D.N.Y. Mar. 21, 2017) (remand appropriate where the ALJ failed to explain how he arrived at the conclusion that the marked limitations found by a doctor were consistent with the occasional head movements and posture activities permitted in his RFC determination); *Otts v. Colvin*, 15-CV-6731, 2016 U.S. Dist. LEXIS 157211 (W.D.N.Y. Nov. 11, 2016) (remand warranted where the ALJ did not explain how plaintiff could perform light work despite the fact that a physician opined that plaintiff had "a moderate to marked restriction for lifting, carrying, pushing and pulling"); *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000) (finding a consulting physician's opinion that plaintiff had a "moderate" impairment in lifting and carrying to be "so vague as to render it useless in evaluating whether [the plaintiff] can perform sedentary work.").

Conversely, if the ALJ rejected Dr. Arora's opinion that plaintiff has a marked limitation in the ability to climb stairs, remand is necessary because the ALJ both fails to

10

explain why Dr. Arora's opinion was rejected and fails to cite any other medical evidence to support his conclusion that plaintiff can occasionally climb stairs. *See Smith v. Bowen*, 687 F. Supp. 902, 904 (SDNY 1988) (the ALJ's "failure to acknowledge relevant evidence or to explain its implicit rejection is plain error"). In *Rodgers v. Colvin*, this District found that an ALJ erred in determining that a plaintiff retained an RFC for light work since no evidence supported his conclusion that plaintiff could stand or walk for six hours during an eight-hour day. 16-CV-6739, 2018 U.S. Dist. LEXIS 7522 (W.D.N.Y. Jan. 17, 2018). Likewise here, the ALJ erred by failing to cite to medical evidence in support of his conclusion that plaintiff can occasionally climb stairs. *See e.g., Urban v. Berryhill*, 16-CV-76, 2017 U.S. Dist. LEXIS 53774 (W.D.N.Y. Apr. 7, 2017) ("An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence."); *Felder v. Astrue*, 10-CV-5747, 2012 U.S. Dist. LEXIS 129384, *36 (E.D.N.Y. Sept. 11, 2012) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of a supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error.").

An ALJ has an affirmative obligation to develop a complete administrative record. *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009); 20 C.F.R. §416.913(e)(1)-(3) ("the record as a whole must be complete and detailed enough to allow the ALJ to determine the claimant's residual functional capacity."). To that end, when faced with gaps or ambiguities in the record, the regulations provide various options for ALJ's such as re-contacting the treating physician, requesting additional records,

11

arranging for a consultative examination, or seeking information from others. *See* 20 C.F.R. §416.920b. Here, remand is appropriate in order for the ALJ to reassess plaintiff's ability to climb stairs and amend the RFC determination accordingly. The ALJ should further develop the record as necessary and should cite specific medical and other evidence relied on in making this determination. Should the ALJ again find that plaintiff has a limitation with respect to climbing stairs, the ALJ should specifically describe that limitation and explain how it is consistent with plaintiff's RFC.

Plaintiff further argues that the RFC was not supported by substantial evidence because the ALJ did not take into account plaintiff's significant restrictions with respect to walking, standing, sitting and lifting. (*See* Dkt. No. 12-1 (Plaintiff's Memo. of Law)). Plaintiff testified that his standing is limited and that he can walk short distances. (Tr. 24, 47, 245). Plaintiff also testified that he has difficulty sitting on his right side, has trouble rising from a seated position and that he must frequently alternate between sitting and standing because of pain and discomfort. (Tr. 55-56, 62-64). Plaintiff testified that once a week he sits at church for a two-hour period with a cushion under his right hip. (Tr. 24, 56-57). The disability benefits application indicates that plaintiff is unable to sit, stand or walk for long periods of time. (Tr. 231). The ALJ credits Dr. Liu's finding that plaintiff has mild to moderate limitations to prolonged walking and gives partial weight to Dr. Arora's opinion that plaintiff has moderate limitations to walking. (Tr. 26). While Dr. Liu and Dr. Arora both found that plaintiff was capable of sitting, standing and rising from a seated position, neither doctor rendered an opinion as to how long plaintiff could remain sitting or standing either at one time or total over the course of a work day. (Tr. 279-81, 315-17).

12

Light work requires "a good deal of walking or standing, on or off, for a total of approximately six hours in an eight-hour workday, with sitting occurring intermittently at the time…or light work may involve sitting most of the time with some pushing and pulling of the arms or leg controls." *Klimek v. Colvin*, 1:15-cv-00789, 2016 U.S. Dist. LEXIS 129804 (N.D.N.Y. July 21, 2016); a*ccord SSR* 83-10, 1983 SSR LEXIS 30, (SSA 1983). Here, the RFC indicates that plaintiff is unable to use foot controls and "should be permitted to use a pillow while sitting and needs to sit or stand at will while on task." (Tr. 23). Indeed, the ALJ did not find that plaintiff could perform light work that required "sitting most of the time", since he found that plaintiff needed to sit or stand at will and was unable to use foot controls. Further, by including a requirement that plaintiff be permitted to sit or stand at will, the ALJ clearly determined that plaintiff has some limitations in his ability to sit or stand. The ALJ also credited Dr. Liu's opinion that plaintiff has a mild to moderate limitation for prolonged walking. No specific finding is made, however, as to how much plaintiff can sit, stand or walk at one time or total over the course of an eight-hour day. Thus, even taking into account the general ability to "sit or stand at will", there is not substantial evidence in the record that plaintiff could sit, stand, or walk, on and off, for a total of approximately six hours as is required for light work. *See Shipman v. Comm'r of Soc. Sec.*, 5:14-CV-0077, 2015 U.S. Dist. LEXIS 124135 (N.D.N.Y. Sept. 17, 2015) ("Without a specific finding of the total duration of time the claimant can spend in each position, merely including a sit/stand/walk at will option is not sufficient to show a claimant can, in fact, make it through an eight hour work day by alternating between those positions."). *Falk v. Colvin*, 15-Civ. 3863, 2016 U.S. Dist. LEXIS 110677 (S.D.N.Y. Aug. 18, 2016) (ALJ failed to properly determine extent of plaintiff's limitation, rendering RFC

assessment incomplete, where he made no determination as to the frequency with which plaintiff would need to alternate between standing and sitting).

Some courts have found that limitations as to prolonged sitting or standing do not necessarily preclude an individual from performing light work. *See Carroll v. Colvin*, 13-CV-456, 2014 U.S. Dist. LEXIS 88819 (W.D.N.Y. June 30, 2014) ("several courts have upheld an ALJ's decision that the claimant can perform the requirements of light or sedentary work even when there is evidence that the claimant has moderate difficulties in prolonged sitting or standing."). However, without a more specific finding as to plaintiff's capabilities for sitting, standing and walking at one time and over the course of an eight-hour day, as well as the frequency with which he would need to change positions, such a determination cannot be made here.[7] Thus, on remand, the ALJ should also develop the record as to plaintiff's specific ability to sit, stand and walk over the course of the day as well as how often he would need to change positions. The ALJ should reconsider and clarify plaintiff's RFC accordingly.[8]

Plaintiff also argues that the ALJ's credibility assessment was not supported by the record. (*See* Dkt. No. 12-1 (Plaintiff's Memo. of Law)). In light of the Court's decision to remand this matter for further proceedings, the Court declines to reach these arguments. Instead, the Commissioner is instructed to reconsider these findings in light of the record as a whole following remand. *Weiland v. Colvin*, 6:16-CV-06100, 2017 U.S. Dist. LEXIS 15947 (W.D.N.Y. Feb. 4, 2017) (where remand was ordered for reconsideration of

---

[7] The ALJ notes that plaintiff testified that every Sunday he attends church and sits for a two-hour period of time with a cushion under his right hip. (Tr. 24). However, the ALJ does not make any finding, supported by specific references to medical evidence, as to how long plaintiff can sit over the course of a work-day and how frequently he would need to alternate between sitting and standing.

[8] The Court also notes that there does not appear to be any medical evidence in the record as to plaintiff's ability to lift. Plaintiff testified that he could lift "something light", like his "plate" or "clothes". (Tr. 67). On remand, the ALJ is to consider whether the record should be further developed as to plaintiff's ability to lift.

plaintiff's RFC and further development of the administrative record, the court declined to address plaintiff's credibility arguments since "plaintiff's credibility must be reconsidered on remand upon thorough consideration of the fully developed administrative record"); *Palmer v. Colvin*, 1-15-CV-00402, 2016 U.S. Dist. LEXIS 170838 (W.D.N.Y. Dec. 9, 2016) (where the court expected that the ALJ's RFC assessment and/or findings regarding the listings would necessarily be altered when considered on remand, the court declined to address plaintiff's further argument as to credibility and the ALJ's step four finding).

Finally, plaintiff argues that the ALJ's step four finding that he could perform his past relevant work is not support by substantial evidence. (*See* Dkt. No. 12-1 (Plaintiff's Memo. of Law)). VE Erbacher testified that the job of Case Aide, as described in the Dictionary of Occupational Titles, was closest to plaintiff's past relevant work as a housing overseer. Plaintiff notes that his prior position of housing overseer involved stair climbing as well as the monitoring, chasing and detention of prisoners when necessary and that the job of Case Aide does not contain the same or similar physical requirements. Plaintiff argues that while the job of Case Aide has a light exertional level (Tr. 27), his prior position called for the "ability to perform at a medium exertional level." (Dkt. No. 12-1, pg. 12). *See Valencia v. Heckler*, 751 F.2d 1082, 1086 (9th Cir. 1985) ("Every occupation consists of a myriad of tasks, each involving different degrees of physical exertion. To classify an applicant's 'past relevant work' according to the least demanding function of the claimant's past occupations is contrary to the letter and spirit of the Social Security Act."). Thus,

plaintiff argues that the ALJ should have treated his past relevant work as a housing overseer as a composite job according to Social Security Regulation 82-61.[9]

Here, the Court has ordered remand for further development of the record and a reassessment of plaintiff's RFC. Once the new RFC has been determined, the ALJ will need to reconsider, at step four, whether plaintiff can perform the requirements of his past relevant work. To that end, the ALJ should also reconsider whether, given the exertional requirements referenced in plaintiff's testimony and other parts of the record (Tr. 41-42, 220, 252), plaintiff's prior position of housing overseer is more properly classified as a composite job. *See Long v. Berryhill*, 16-CV-760, 2018 U.S. Dist. LEXIS 14842 (W.D.N.Y. Jan. 30. 2018) ("While the Commissioner may ultimately find that Plaintiff's previous relevant work was properly classified as light work or that it was not a composite job, sufficient evidence must be gathered and sufficient analysis must be provided to allow review of that decision."). If the ALJ concludes that plaintiff lacks the ability to return to his past relevant work, then the ALJ must proceed to step five and determine if plaintiff can, in light of his age, work experience, education and RFC, perform any other substantial, gainful work which exists in the national economy.

## **CONCLUSION**

For the foregoing reasons, plaintiff Thomas Edwards' motion for judgment on the pleadings (Dkt. No. 12) is granted, defendant Commissioner of Social Security's motion for judgment on the pleadings (Dkt. No. 14) is denied, and the matter is remanded to the

---

[9] SSR 82-61 explains that "[c]omposite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT…[s]uch situations will be evaluated according to the particular facts of each individual case." *See SSR* 82-61, 1982 SSR LEXIS 31 (SSA 1982).

Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: November 7, 2018
Buffalo, New York

*/s/ Michael J. Roemer*
MICHAEL J. ROEMER
United States Magistrate Judge